UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BERTHA J. BROWN,**

        **Plaintiff,**                      Civil Action No. 17-cv-13843

        v.                              District Judge David M. Lawson

**COMMISSIONER OF**                  Magistrate Judge Mona K. Majzoub
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Bertha J. Brown seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that she is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 15) and Defendant's Motion for Summary Judgment (docket no. 18). This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 3.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

**I.    RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 15) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 18) be **GRANTED**, and that the case dismissed in its entirety.

## II. PROCEDURAL HISTORY

On March 25, 2015, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging that she became disabled on October 31, 2013. (TR 196–218.) On May 26, 2015, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits with the same alleged onset date. (TR 220–25.) Plaintiff later amended her alleged onset date to October 12, 2015. (Docket no. 15, p. 2.) The Social Security Administration initially denied Plaintiff's claims on September 16, 2015. (TR 104–05.) On September 14, 2016, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge ("ALJ") Martha M. Gasparovich. (TR 27–56.) On December 13, 2016, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 10–21.) Plaintiff requested a review of the ALJ's decision with the Appeals Council, which was denied on November 7, 2017. (TR 1–3.) On November 29, 2017, Plaintiff commenced this action for judicial review. (Docket no. 1.) The parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 15; docket no. 18.)

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of her medical issues. (Docket no. 15, pp. 2–6.) In addition, the ALJ summarized Plaintiff's medical record (TR 14–20.) Defendant adopted the ALJ's recitation of the facts, but separately summarized Plaintiff's treatment history from October of 2015 through May of 2016. (Docket no. 18, pp. 4–6.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

**IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ determined that Plaintiff met the insured-status requirements of the Social Security Act through December 31, 2019, and that she had not engaged in substantial gainful activity since October 12, 2015, the alleged onset date.  (TR 13.)  The ALJ found that Plaintiff had the following severe impairments: "central nervous system disorder; spine disorder; chronic obstructive pulmonary disorder (COPD)/asthma; obesity; and left carpal tunnel syndrome."  (TR 14.)  Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (TR 13–14.)

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following non-exertional limitations:

- Plaintiff can stand and walk no more than six hours in an eight-hour day;
- Sitting is unlimited, but Plaintiff requires a sit/stand option every thirty minutes;
- Plaintiff can lift more than twenty pounds occasionally and ten pounds frequently;
- Plaintiff can occasionally squat, crawl, kneel, climb, balance, bend and stoop;
- Plaintiff cannot perform forceful gripping or twisting such as opening a sealed bottle or using a screwdriver;
- Plaintiff requires a clean environment, free from concentrated levels of dust, fumes, chemicals, gases, and other airborne irritants.

(TR 16–20.)  Based on this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that a person with Plaintiff's RFC could perform the requirements of Plaintiff's past relevant work as a companion aide.  (TR 20.)  Accordingly, the ALJ concluded that Plaintiff was not disabled from October 31, 2013 through the date of the decision.  (TR 21.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the

conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.    Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.    Analysis**

Plaintiff raises four objections to the ALJ's decision. (Docket no. 15.) First, Plaintiff contends that the ALJ failed to consider the combined effect of her impairments in determining

5

whether those impairments were "severe." (*Id*. at 8–10.) Second, Plaintiff alleges that the ALJ erred by giving only little weight to the opinion of consultative examiner Dr. Sami Ahmed. (*Id.* at 10–13.) Third, Plaintiff argues that the ALJ failed to give good reasons for not adopting limitations proposed by her treating physician, Dr. Louis Wulfekuhler. (*Id.* at 13–15.) Finally, Plaintiff asserts that the ALJ improperly evaluated her obesity. (*Id.* at 15–17.)

### 1. Step-Two Determination

Plaintiff contends that the ALJ "failed to consider the combined effect of [her] impairments when determining the level of severity." (Docket no. 15, p. 8.) Plaintiff grounds this argument in step two of the ALJ's five-step sequential analysis. (*Id*.) However, because the ALJ found several severe impairments at step two, this argument is misplaced.

After an ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citing Soc. Sec. Rul. 96–8p, 1996 WL 374184, at \*5). Accordingly, once a claimant "clears" step two of the analysis, the fact that some of the claimant's impairments are not deemed to be severe at step two is "legally irrelevant." *See Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

### 2. Opinion of Consulting Physician Dr. Ahmed

Next, Plaintiff asserts that the ALJ erred by giving only little weight to the opinion of consultative examiner Dr. Sami Ahmed. (Docket no. 15, p. 10.) That determination is reviewed for substantial evidence.

In a report dated September 6, 2015, Dr. Ahmed observed that Plaintiff complained of upper back pain and carpal tunnel syndrome in her left hand. (TR 332–40.) Dr. Ahmed noted that

Plaintiff's left wrist was in a brace and "limited secondary to report of pain." (TR 338.) However, Plaintiff displayed 5/5 strength in both upper extremities and was "sensate to soft touch symmetrically." (*Id.*) Dr. Ahmed concluded that Plaintiff had no lifting restrictions, but could only occasionally perform manipulative activities. (TR 340.)

The ALJ gave only little weight to Dr. Ahmed's opinion, reasoning that it was "not consistent with the record as a whole," which according to the ALJ "documents evidence of mild left carpal tunnel syndrome, 5/5 strength of the upper extremities and normal sensory examinations." (TR 19.)

As the ALJ observed, a February 2015 EMG revealed "evidence of a mild sensory median mononeuropathy at the left wrist (consistent with Carpal tunnel syndrome)." (TR 321.) Nevertheless, treatment notes from a March 28, 2016 examination show that Plaintiff had "no musculoskeletal symptoms," "no neurological symptoms," "no sensory exam abnormalities" and a normal motor exam. (TR 350–51.) And as noted above, Dr. Ahmed's own report states that Plaintiff demonstrated 5/5 strength in both upper extremities. (TR 338.) Accordingly, substantial evidence supports the ALJ's determination to give only little weight to Dr. Ahmed's opinion.

### 3. Opinion of Treating Physician Dr. Wulfekuhler

Plaintiff contends that the ALJ improperly evaluated the opinion of her treating physician, Dr. Louis Wulfekuhler. (Docket no. 15, p. 13.)

In an examination report dated October 12, 2015, Dr. Wulfekuhler observed that Plaintiff displayed weakness in her left extremities, that she could not lift as well with her left arm, and that her left grip was weak. (TR 341–44.) Based on his examination, Dr. Wulfekuhler recommended the following limitations:

- Plaintiff can sit for about four hours and stand and/or walk for about two hours in an eight-hour workday;

7

- Plaintiff can lift no more than ten pounds;

- Plaintiff would need to take two to four unscheduled breaks during a normal workday; Plaintiff should keep her legs elevated for fifty percent of an eight-hour day;

- Plaintiff can use her left hand to grasp, turn, twist, perform fine manipulation or reach overhead for less than thirty percent of the workday;

- Plaintiff would miss work more than four days per month.

(*Id.*)

The ALJ gave only some weight to Dr. Wulfekuhler's opinion and did not adopt his proposed limitations. (TR 16, 19.)

Under the treating physician rule, the ALJ will give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give a treating source's opinion controlling weight, she must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ must also "give good reasons in [her] notice of determination or decision for the weight [given to a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). Such good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2p (S.S.A. July 2, 1996).

8

In support of her determination not to adopt Dr. Wulfekuhler's proposed limitations, the ALJ observed that Dr. Wulfekuhler's treatment notes "reveal mostly benign findings, with no abnormalities of the cervical, thoracic and lumbar spine, a normal gait and no sensory exam abnormalities." (TR 17.)  Although Dr. Wulfekuhler observed that Plaintiff had reduced left-arm strength ("4+ of 5+") in January of 2015 (prior to the alleged onset date), his treatment notes reflect no carpal tunnel symptoms over the course of four visits from September of 2015 through May of 2016.  (TR 357–61.)  In September of 2015, Plaintiff complained of knee pain, but not back or wrist pain.  (TR 361–62.)  In January of 2016, Plaintiff displayed "no musculoskeletal symptoms" and a neurological motor examination "demonstrated no dysfunction."  (TR 354–55.)  In March of 2016, Dr. Wulfekuhler observed that Plaintiff had no musculoskeletal symptoms, a normal back and normal gait and stance.  (TR 350.)  Thus, the ALJ reasonably concluded that Dr. Wulfekuhler's treatment notes do not support the substantial limitations he proposed.

In addition, the ALJ highlighted an inconsistency between Dr. Wulfekuhler's proposed limitations and the relatively conservative course of treatment Plaintiff had undergone.  (TR 19.)  Specifically, the ALJ noted that "[w]hile the claimant takes prescription medication and has undergone physical therapy, she has not reported any additional treatment for her physical impairments, including use of a TENS Unit or surgery" and that "there is no indication in the record that the claimant's treating physicians have recommended any greater treatment modalities."  (*Id.*)

Accordingly, the ALJ provided good reasons for deviating from Dr. Wulfekuhler's proposed limitations.

### *4. Consideration of Obesity*

Finally, Plaintiff asserts that the ALJ erred in evaluating her obesity. (Docket no. 15, p. 15.) Plaintiff contends that her obesity "significantly limits [her] physical ability to do basic work activities." (*Id.* at 17.)

The Social Security Administration's policy interpretation ruling regarding obesity provides that:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

*Titles II & XVI: Evaluation of Obesity*, SSR 02-1p (S.S.A. Sept. 12, 2002).

In her decision, the ALJ cited this ruling, and observed that Plaintiff's "medical records demonstrate [she] had a Body Mass Index (BMI) ranging from 37 to 39.9, in the obese range." (TR 18.) The ALJ concluded that "[t]he combined effects of the claimant's obesity, along with her other impairments, support the reduced light residual functional capacity as described in this finding," which included limitations to (1) standing and walking no more than six hours in an eight-hour day, (2) having the option to sit or stand every thirty minutes, and (3) only occasionally squatting, crawling, kneeling, climbing, balancing, bending and stooping. (TR 16, 18.)

Accordingly the ALJ complied with the applicable regulations concerning evaluation of obesity.

## VI. CONCLUSION

For the reasons set forth above, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 15) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 18) be **GRANTED**, and that the case dismissed in its entirety.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response will be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response will address specifically, and in the same order raised, each issue contained within the objections.

Dated: December 12, 2018     s/ Mona K. Majzoub
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff Bertha Brown and counsel of record on this date.

Dated: December 12, 2018        s/ Leanne Hosking
                                            Case Manager